ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| JONATHAN F. PÉREZ PARRIS<br><br>Parte Peticionaria<br><br><br>v.<br><br><br><br>SUPERINTENDENTE DE LA CÁRCEL BAYAMÓN 705<br><br>Parte Recurrida | TA2025CE00676 | *Certiorari,*<br>procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.:<br>K MI2025-0268<br><br>Sala: 1107<br><br>Sobre:<br>Habeas Corpus |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 6 de noviembre de 2025.

Compareció ante este Tribunal la parte peticionaria, el Sr. Jonathan F. Pérez Parris (en adelante, el "señor Pérez Parris" o el "Peticionario"), mediante recurso de *Certiorari* presentado el 25 de octubre de 2025. Nos solicitó la revocación de la *Orden* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, el "TPI"), el 9 de septiembre de 2025 y notificada el mismo día. A través del aludido dictamen, el TPI declaró "No Ha Lugar" la solicitud de *habeas corpus* presentada por el Peticionario.

Por los fundamentos que expondremos a continuación, se *expide* el auto de *certiorari* y se *confirma* el dictamen recurrido.

**I.**

El 13 de febrero de 2025, el Ministerio Público presentó varias denuncias en contra del señor Pérez Parris por infringir los Artículos 130A, y 133A del Código Penal de Puerto Rico, 33 LPRA secs. 5191 y 5194, y el Artículo 53-B de la Ley Núm. 57-2023, según enmendada, conocida como la "Ley para Prevención del Maltrato, Preservación de la Unidad Familiar y

para la Seguridad, Bienestar y Protección de los Menores", 8 LPRA sec. 1641 *et seq*. En síntesis, al Peticionario se le imputó cometer los delitos de agresión sexual, actos lascivos y maltrato, respectivamente, en contra de los menores de edad Y.O.R, J.S.R., y J.E.C.R. En igual fecha y tras la determinación de causa para su arresto, el Peticionario fue ingresado a prisión por no haber prestado fianza.

Así la cosas, el foro primario pautó la celebración de la vista preliminar para el 27 de febrero de 2025. Sin embargo, hubo varios señalamientos de esta. Entre otros asuntos, el TPI relevó al Lcdo. Luis Viera como representante legal del Peticionario y asignó al Lcdo. Diego Alonso Pastrana del Panel de Abogados Voluntarios.

Posteriormente, el 15 de abril de 2025, el Peticionario renunció por escrito a que se celebrara vista preliminar en su caso. De manera que, se determinó que existía causa probable para acusar por todos los delitos imputados en las denuncias y se señaló el juicio para el 21 de mayo de 2025. El 22 de abril de 2025, se llevó a cabo el acto de lectura de acusación.

Luego de varios trámites procesales, el 2 de julio de 2025, se celebró una vista sobre el estado de los procedimientos. En particular, se aceptó el relevo solicitado por el Lcdo. Diego Alonso. Por otro lado, el Lcdo. Luis E. Torres Meléndez fue designado como abogado de oficio. Asimismo, el foro primario pautó el inicio del juicio en su fondo para el 6 de agosto de 2025.

Llegado el día, el foro *a quo* tomó el juramento preliminar a varios candidatos como miembros del jurado. A su vez, se señaló la continuación del Juicio por Jurado (selección) para el 3 de diciembre de 2025. Así las cosas, el 8 de septiembre de 2025, el Peticionario presentó una "**Moción en solicitud de Habeas Corpus**". En esta, alegó que hasta ese entonces llevaba siete (7) meses en detención preventiva. Adujo que se encontraba detenido en la Institución Correccional 705 de Bayamón desde el 13 de febrero de 2025. Agregó que el 6 de agosto de 2025 se señaló el juicio donde se juramentó preliminarmente el jurado y que el caso fue señalado para el 3 de diciembre de 2025 para la continuación de los procedimientos. Planteó que "la razón para dicho señalamiento tan remoto es que el

calendario de la sala estaba lleno hasta entonces". Por último, aseveró que "[e]n el caso de autos serían once (11) meses para continuar el *voir dire,* un claro subterfugio para evitar el juicio rápido". Por tanto, solicitó que se ordenara su inmediata excarcelación.

En virtud de ello, el TPI emitió una *Orden* en la que decretó "No Ha Lugar" a la solicitud de *habeas corpus* del Peticionario y destacó que "[e]l juicio comenz[ó] con la juramentación de jurado". Insatisfecho, el 24 septiembre de 2025, el señor Pérez Parris presentó una "**Moción de Reconsideración**". En vista de lo anterior, el 25 de septiembre de 2025, notificada al siguiente día, el TPI emitió una *Orden* mediante la cual denegó la solicitud de reconsideración.

Inconforme con la determinación del foro primario, el señor Pérez Parris presentó el recurso que nos ocupa, mediante el cual le imputó la comisión del siguiente error:

> Erró el Honorable Tribunal de Primera Instancia al denegar la excarcelación del señor Pérez Parris bajo el pretexto de que ya se había juramentado preliminarmente el jurado dentro del t[é]rmino de los 6 meses y señalar la continuación del caso cuatro meses m[á]s tarde en una clara violación al derecho constitucional de detención preventiva.

El 4 de noviembre de 2025, la Recurrida, por conducto de la Oficina del Procurador General, presentó "**Escrito en Cumplimiento de Orden**".

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II.

### A.

El auto de *certiorari* es el recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior. McNeil Healthcare v. Mun. Las Piedras I, 206 DPR 391, 403 (2021). "[L]a característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". Rivera *et al.* v. Arcos Dorados *et al.*, 212 DPR 194, 209 (2023). Con el fin de que podamos ejercer de una manera sensata nuestra facultad discrecional de entender o no en los méritos de los asuntos que son planteados mediante el recurso, la Regla 40 de nuestro

Reglamento, 4 LPRA Ap. XXII-B, señala los criterios que debemos considerar al atender una solicitud de expedición de un auto de *certiorari*. BPPR v. SLG Gómez-López, 213 DPR 314, 336 (2023). En lo pertinente, la precitada disposición reglamentaria establece lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari*, o de una orden de mostrar causa:
>
> A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos son contrarios a derecho.
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
> F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, *supra*.

Dentro de este marco, el análisis del foro apelativo intermedio -al momento de considerar los asuntos planteados mediante el recurso de *certiorari*- no se efectúa en el vacío ni se aparta de otros parámetros. Rivera *et al.* v. Arcos Dorados *et al.*, *supra*, pág. 209; 800 Ponce de León v. AIG, 205 DPR 163, 176 (2020). Las delimitaciones que imponen estas disposiciones reglamentarias tienen como objetivo intrínseco prevenir la "dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación". Mun. Caguas v. JRO Construction, Inc.*,* 201 DPR 703, 712 (2019). Nótese que, distinto al recurso de apelación, el auto de *certiorari*, por ser un recurso discrecional, debe ser utilizado con cautela y por razones de peso. Pueblo v. Díaz de León, 176 DPR 913, 918 (2009).

En ese sentido, el Tribunal Supremo de Puerto Rico reiteradamente ha indicado que la *discreción* significa tener poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción. García v.

Padró, 165 DPR 324, 334 (2005). El adecuado ejercicio de la discreción judicial está "inexorable e indefectiblemente atado al concepto de la razonabilidad". Pueblo v. Ortega Santiago, 125 DPR 203, 211 (1990). Así pues, un tribunal apelativo no intervendrá con las determinaciones discrecionales de un tribunal sentenciador, a no ser que las decisiones emitidas por este último sean arbitrarias o en abuso de su discreción. S.L.G. Flores-Jiménez v. Colberg, 173 DPR 843, 865 (2008).

**B.**

La Sección 11 del Artículo II de la Constitución de Puerto Rico dispone que todo acusado tendrá derecho a quedar en libertad bajo fianza antes de mediar un fallo condenatorio. Art. II, sec. 11, Const. PR, LPRA, Tomo 1. Dicha disposición constitucional también establece que la detención preventiva antes del juicio no excederá de seis (6) meses. Íd. En este sentido, el término "detención preventiva" alude al período anterior al juicio, en el cual el acusado está detenido preventivamente por no haber prestado la fianza impuesta y se encuentra en espera de que se celebre el proceso criminal en su contra. Pueblo v. Méndez Pérez, 193 DPR 781, 787 (2015); Pueblo v. Pagán Medina, 178 DPR 228, 236 (2010). La referida cláusula constitucional tiene un propósito dual de asegurar la comparecencia del acusado a los procedimientos cuando éste no ha prestado fianza y evitar un castigo excesivo por un delito por el cual no ha sido juzgado. Íd. De manera que está arraigada en el derecho fundamental a la presunción de inocencia. Íd.

En particular, nuestro más alto foro ha señalado que "el término constitucional de detención preventiva de seis (6) meses comienza a contar desde que el imputado es detenido preventivamente por no poder prestar la fianza requerida o por su revocación, cuestión que ocurre tras la intervención del juez para imponer la fianza o para revocarla". Ponce Ayala, Ex parte I, 179 DPR 18, 27 (2010). Es decir, lo que activa dicho término es la detención provocada por la ausencia de fianza o por su revocación. Íd.

Ahora bien, una vez transcurren seis (6) meses desde la detención del acusado sin haber sido sometido al juicio correspondiente, éste tiene

derecho a ser excarcelado y permanecer en libertad por el resto del tiempo que dure el procedimiento en su contra. Pueblo v. Paonesa Arroyo, 173 DPR 203, 211 (2008). La aludida protección constitucional es una "protección específica adicional que es independiente de las garantías de juicio rápido". Ponce Ayala, *Ex parte* I, *supra*, págs. 28-29. En consecuencia, distinto a la cláusula constitucional de juicio rápido, donde los términos se fijaron estatutariamente, el plazo aquí en cuestión es de estirpe constitucional, pues la cláusula diáfanamente establece el término fatal de seis (6) meses. Por ello, no está sujeto al análisis de justa causa. E.L. Chiesa Aponte, Derecho procesal penal, 80 Rev. Jur. UPR 681, 689–690 (2011).

A tono con lo anterior, en el contexto de la cláusula constitucional sobre detención preventiva **se entiende que el juicio ha comenzado cuando se juramenta preliminarmente al jurado**. Al respecto, el Tribunal Supremo de Puerto Rico ha explicado que:

> [D]icha determinación puede promover que, en ocasiones, se lleve a cabo la juramentación preliminar con el único propósito de asegurar que el acusado permanezca detenido. Si bien ello puede suceder, el acusado no queda huérfano de remedios ya que, una vez se lleva a cabo la juramentación preliminar *bajo el palio del derecho a un juicio rápido, el tribunal no se puede cruzar de brazos.* A esos efectos, y al interpretar el *Speedy Trial Act*, las cortes federales han concluido que una dilación excesiva entre el *voir dire* y la juramentación definitiva del Jurado es una violación al derecho a un juicio rápido que puede conllevar la desestimación de la acusación. *Acogemos dicho razonamiento e interpretación.* Pueblo v. Paonesa Arroyo, *supra*, págs. 215-216 (énfasis en el original) (citas omitidas).

En esa línea, nuestro máximo foro concluyó que el remedio que tenía disponible el acusado en el ese caso era una solicitud de desestimación y no un *habeas corpus*. Al igual que "pudo haber solicitado —y no lo hizo— la expedición de un *mandamus* para que el tribunal señalara la continuación de los procedimientos con celeridad". Íd., pág. 217. Por ende, conviene resaltar lo siguiente:

> [L]a consideración subyacente en el derecho a no ser detenido preventivamente por más de seis (6) meses es la **incertidumbre que se le crea a la persona imputada de un delito**. Específicamente, se trata de proteger a una persona que ha sido detenida por más de seis (6) meses sin que haya comenzado el Juicio en su contra, ante la incertidumbre de cuándo en efecto comenzará el Juicio. **Una vez un acusado solicita un *habeas corpus* luego de que ha comenzado el juicio en su contra, alegando que estuvo encarcelado por**

**más de seis (6) meses sin que se le celebrara el juicio, el elemento de incertidumbre ya ha dejado de existir**. En estos casos, el juicio ya ha comenzado y, por lo tanto, no existe riesgo real de que el acusado permanezca detenido preventivamente por tiempo indefinido. Pueblo v. Díaz, Rivera, 204 DPR 472, 488-489 (2020) (énfasis suplido).

### D.

El auto de *habeas corpus* es un recurso extraordinario de naturaleza civil, mediante el cual una persona que está privada ilegalmente de su libertad solicita de la autoridad judicial competente que investigue la causa de su detención. Pueblo v. Díaz, Rivera, 204 DPR 472, 485 (2020) (citando a Quiles v. Del Valle, 167 DPR 458, 466 (2006)). Dicho recurso está reconocido en la Sección 13 del Artículo II de la Constitución de Puerto Rico, LPRA, Tomo 1 y también está reglamentado en el Código de Enjuiciamiento Criminal, 34 LPRA sec. 1741-1780. "Se utiliza este recurso ya que al cabo de los seis meses la detención se convierte en ilegal. Se crea entonces, una ficción jurídica y la persona deberá ser puesta en libertad bajo una 'fianza del pueblo' en lo que se celebra el juicio". D. Nevárez Muñiz, Sumario de Derecho Procesal Penal Puertorriqueño, 10ma ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2014, pág. 260.

Ahora bien, el otorgamiento de un *habeas corpus* ante la violación al término de detención preventiva no es absoluto. Pueblo v. Díaz, Rivera, *supra*, pág. 486. A su vez, al ser éste un recurso extraordinario, su uso debe limitarse a situaciones excepcionales donde se hayan agotado todos los remedios ordinarios disponibles antes de recurrir al mismo. Íd., pág. 485 (citando a Quiles v. Del Valle, *supra*, pág. 467; Ortiz v. Alcaide Penitencia Estatal, 131 DPR 849, 861 (1992)). En palabras de la profesora Nevárez-Muñiz, este recurso altamente privilegiado no se expedirá si hay otro remedio adecuado en ley, salvo cuando el *habeas corpus* sea el más adecuado o se trata de una situación excepcional, o un caso que en realidad lo amerite. D. Nevárez Muñiz, Sumario de Derecho Procesal Penal Puertorriqueño, *supra*, pág. 259. Además, el *habeas corpus* no procede cuando es instado a destiempo, ya sea porque se invocó antes de que se cumpliera el término de seis (6) meses o porque se instó tardíamente. Pueblo v. Díaz, Rivera, *supra*, págs. 486-487.

**III.**

En el presente caso, el Peticionario nos solicitó que revoquemos la *Orden* del TPI mediante la cual se declaró "No Ha Lugar" la solicitud de *habeas corpus* instada por éste. En esencia, el Peticionario señaló como único error que incidió el foro primario al denegar su excarcelación bajo el pretexto de que ya se había juramentado preliminarmente el jurado dentro del término correspondiente y al señalar la continuación del caso para cuatro (4) meses más tarde. Así pues, alegó que el TPI "con el único aparente propósito de evitar cumplir con el requisito constitucional que prohíbe que los ciudadanos estén detenidos preventivamente por más de seis (6) meses sin que empiece el juicio, […] juramentó preliminarmente el jurado". No nos convence su postura. Veamos.

Según reseñamos, el 13 de febrero de 2025, el Ministerio Público presentó varias denuncias en contra del Peticionario, y en igual fecha, éste fue ingresado a prisión por no haber prestado fianza, luego de haberse hallado causa para su arresto. Concluidos los pertinentes trámites procesales, el 6 de agosto de 2025, se tomó juramento preliminar al jurado. A la luz del derecho previamente esbozado, el término constitucional de detención preventiva de seis (6) meses comienza a contar desde que el imputado es detenido preventivamente por no poder prestar la fianza exigida. Ponce Ayala, *ex parte* I, *supra*, pág. 27. En este sentido, la consideración implícita es la incertidumbre de cuándo iniciará el juicio que se le crea a la persona imputada de un delito. Pueblo v. Díaz Alicea, *supra*, pág. 488.

A esos efectos, fue el 13 de febrero de 2025 que comenzó a decursar el término de 180 días de detención preventiva, conforme a nuestro ordenamiento jurídico. En consecuencia, el estado de incertidumbre en el que se hallaba el Peticionario cesó el 6 de agosto de 2025 con la juramentación preliminar del jurado. Nótese que lo indicado anteriormente ocurrió dentro de los seis (6) meses que sigue la detención preventiva. Contrario a lo reclamado por el Peticionario, no hallamos en el expediente ningún indicador de que la juramentación del jurado en el caso de autos fue

un mero "pretexto". Por tanto, una vez ello ocurrió, la protección constitucional en la que el Peticionario basó su solicitud alcanzó su finalidad una vez inició el juicio, tras la juramentación preliminar. Pueblo v. Paonesa, *supra*, pág. 215.

Así pues, luego de una lectura y análisis sosegado del recurso en cuestión, así como de los documentos que conforman su apéndice y los argumentos esgrimidos por las partes, resolvemos que no procedía la expedición del recurso extraordinario de *hábeas corpus* presentado por el Peticionario. Según hemos adelantado, la determinación del TPI fue razonable, conforme a las normas jurídicas y el derecho aplicable.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral de la presente *Sentencia*, se *expide* el auto de *certiorari* y se *confirma* la *Orden* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones