BONIFACIO SÁNCHEZ ÁLVAREZ, peticionario, *v.* BALBINO GON-
ZÁLEZ, Alcaide de la Cárcel de Distrito de San Juan, de-
mandado.

Número 718.

*Sometido:* 7 de septiembre de 1955. *Resuelto:* 13 de diciembre de 1955.

*Augusto Burgos Mundo,* Defensor Público, Tribunal Superior,
abogado del peticionario; *Hon. Secretario de Justicia Inte-
rino J. B. Fernández Badillo y Rafael L. Ydrach Yordán,
Fiscal del Tribunal Supremo,* abogados del demandado.

### SENTENCIA

San Juan, Puerto Rico, a 13 de diciembre de 1955

Examinada la petición y el diligenciado del auto, y estu-
diadas las cuestiones envueltas en el presente recurso, el
Tribunal declara con lugar la petición y ordena la inmediata
excarcelación del peticionario hasta la celebración del juicio.

Así lo pronunció y manda el Tribunal y firma el Sr. Juez
Presidente.  El Juez Asociado Sr. Negrón Fernández emitió
una opinión en la cual concurrieron el Juez Presidente Sr.
Snyder y el Juez Asociado Sr. Sifre.  El Juez Asociado Sr.

Pérez Pimentel concurrió en el resultado. Los Jueces Asociados Sres. Marrero y Belaval disintieron.

A. C. SNYDER,
*Juez Presidente.*

Certifico:

IGNACIO RIVERA,
*Secretario.*

Opinión del Juez Asociado Sr. Negrón Fernández en la cual concurren el Juez Presidente Sr. Snyder y el Juez Asociado Sr. Sifre.

No en lenguaje de efímera conquista habló nuestro pueblo el 25 de julio de 1952, al proclamar la Constitución del Estado Libre Asociado de Puerto Rico, y dar vigencia, en su Carta de Derechos, a este lacónico mensaje relacionado con la justicia criminal: "La detención preventiva antes del juicio no excederá de seis meses."

Ha sido el nuestro el primero entre los pueblos de América en hacer parte de su ley fundamental—en protección de otros derechos libertarios de mayor categoría—una limitación expresa al poder de custodia del Estado. Ese es el derecho que aquí invoca Bonifacio Sánchez Álvarez al pedir su excarcelación por medio del presente hábeas corpus. Los hechos en que funda su solicitud—admitidos íntegramente por el demandado en su contestación—son estos: Desde el 16 de enero de 1955, fecha en que fué arrestado bajo acusación de un delito de hurto mayor, Sánchez Álvarez se encuentra encarcelado—por no haber prestado fianza—en la Cárcel de Distrito de San Juan. El juicio en dicha causa fué señalado para el 9 de mayo de 1955, 3 meses 24 días después de su encarcelación. En esta fecha el peticionario, a través de su abogado—el defensor público—solicitó la suspensión del juicio, la cual fué decretada por el tribunal. Un nuevo señalamiento fué hecho para el 14 de junio de 1955, o sea, para 4 meses 28 días después de haber sido encarcelado. En esta segunda ocasión Sánchez Álvarez solicitó nuevamente la

suspensión del juicio, la cual fué también concedida. Un tercer señalamiento fué hecho para el 22 de agosto de 1955, o sea, para 7 meses 8 días con posterioridad a su encarcelación. En esta última ocasión fué el Fiscal quien solicitó y obtuvo la suspensión del juicio. El acusado, invocando el precepto constitucional antes citado, pidió en ese momento ser excarcelado, siendo denegada su solicitud.

■■ El peticionario sostiene en el presente recurso que procede su excarcelación por llevar más de 6 meses detenido sin habérsele celebrado juicio, ya que la referida disposición constitucional establece a su favor un derecho irrenunciable y absoluto.

El Fiscal, por su parte, sostiene que dicho derecho es esencialmente renunciable y que el peticionario, por su conducta al solicitar y obtener la suspensión del juicio en dos ocasiones, renunció a ser excarcelado de acuerdo con dicha disposición constitucional.

La controversia planteada hace necesario, en el estudio sobre el alcance jurídico del precepto, el examen de las fuentes originarias de su creación.

El informe de la Comisión de Carta de Derechos a la Convención Constituyente, contiene el siguiente único párrafo sobre este extremo:

"La disposición limitando a seis meses la detención preventiva es nueva en nuestra jurisdicción. Tiene por propósito impedir que se pueda encarcelar a una persona por más de seis meses sin celebrarle juicio. Actualmente es posible lograr esto, mediante la radicación de acusaciones sucesivas, cada vez que finalice el término de ciento veinte días que marca la ley."

En el curso de los debates sobre dicho Informe, varios delegados se expresaron sobre el alcance del precepto, así:

"El Sr. Alvarado:

"Para oponerme, señor Presidente. Al redactarse esta medida se tuvo en cuenta—como la está teniendo el compañero Gelpí—la legislación vigente. La legislación vigente concede

al fiscal 60 días para radicar la acusación. Y entonces dispone que el juicio debe celebrarse dentro de 120 días después de radicada la acusación. Y en total establece un término de 180 días desde el que el acusado es detenido para responder hasta que se somete a juicio, 180 días, que son los seis meses que hemos venido consignando.

"Esa es la idea, la norma, la medida que usamos. Ahora, piense el compañero y piensen los compañeros delegados, que el término de dos meses es absolutamente insuficiente para poder disponer definitivamente de un caso criminal a través de un juicio. Si fuese un solo juicio pues sería fácil, pero los tribunales están sobrecargados de trabajo en lo criminal. Este término que estamos fijando es tan y tan perentorio que si llegan los seis meses y el acusado no ha sido sometido a juicio, la corte tiene que ponerlo en la calle por un Hábeas Corpus inmediatamente que hayan pasado los seis meses. Si corremos eso a los dos meses, yo digo que será absolutamente imposible para este Estado, para este gobierno, atender todos los procesos criminales y dejarlos despachados dentro de los 60 días de la comisión del delito.

"Sr. Rivera Colón: ¿Me permite una pregunta? ¿Esto dice la detención preventiva antes del juicio?

"Sr. Alvarado: Antes del juicio, antes de someterse a juicio. No es que tiene, es que no pueden pasar de los 6 meses. Si llega a seis meses un día, el hombre se va a la calle por un Hábeas Corpus. Puede ser a los dos (2) meses, puede ser a los dos días, puede ser a los tres días, pero no puede ser después de seis meses.

"Sr. Rivera Colón: ¿No puede ser después de seis meses?

"Sr. Alvarado: Dentro de los seis meses hay que celebrar el juicio. Si no se celebra el juicio dentro de los seis meses, el hombre va para la calle. Ahora, si bajamos eso a dos meses, yo le garantizo que la maquinaria aquí en Puerto Rico, [que] ha multiplicado su eficiencia por diez, [no] podría confrontarse adecuadamente con la situación y despachar todos los casos criminales en dos meses con el juicio correspondiente. El término de seis meses es prudente, es razonable, corresponde a la legislación actual y podría funcionarse con él. Con el otro término sería un absurdo y estaríamos echando constantemente a la calle a las personas porque no podrían ser sometidas razonablemente a juicio dentro del término de seis meses. . . ."

"El Sr. Reyes Delgado: . . . Lo que hay que tener en cuenta aquí es si la situación de los acusados se va a mejorar en alguna forma sustancial con esta disposición. Y se mejora, ¿se pone en peligro la administración de la justicia? No. ¿Puede darse un término más corto sin poner en peligro la administración de la justicia criminal? No. Ya la Legislatura insular ha fijado por ley términos que se consideran razonables para que se actúe; es decir, dos meses para radicar la acusación, cuatro meses de la radicación de la acusación, o sea 120 días para traerlo a juicio. Si dentro de esos seis meses ahora no se le celebra juicio, el fiscal pide el archivo y sobreseimiento y especialmente si se trata de un 'felony', procede otra vez a arrestar al individuo y a recluirlo preventivamente y puede tenerlo otros seis meses en la cárcel sin celebrarle juicio.

"Y a eso es a lo que vamos nosotros encaminando este precepto: que se usen los seis meses de que la legislación local ha tenido a bien proveer al ministerio público para que haga efectiva la maquinaria del pueblo en la administración de la justicia penal. Pero que después, por no haber una disposición de esta naturaleza, no se burle lo que se ha creído que es suficiente para procesar a un hombre y mandarlo a la cárcel. Yo entiendo que si se rebajaran a menos de seis meses, estaríamos poniendo en peligro el principio total y entorpeciendo la administración de la justicia.. . . ."

"El Sr. González Blanes: . . . una cosa son los seis meses que se conceden, los 60 días que se conceden para la presentación de la acusación y los 120 días durante los cuales se le debe someter a juicio. Y otra es la detención preventiva. Lo que se quiere evitar con esta disposición es que un individuo esté preventivamente detenido por tiempo [i] limitado, como acontece muchas veces en los tribunales. Y no se refiere a la obligación que tiene el fiscal de presentar la acusación dentro de los 60 días ni al derecho que tiene el acusado a que se le celebre juicio, de acuerdo con el Código de Enjuiciamiento Criminal, dentro de los 120 días. . . ."

"El Sr. Alvarado nuevamente: Lo que dice el texto es que si a los seis meses de estar él detenido no se le ha celebrado juicio, hay que ponerlo en la calle. Ahora, el proceso sigue, porque eso no lo estamos rigiendo con esta disposición. . . ."

"El Sr. Benítez, Presidente de la Comisión de Carta de Derechos: . . . Precisamente quedó aclarado, señor Soto, al

indicarse esta cláusula, 'antes de juicio' que se establecía a los fines de dejar explícito el hecho de que la protección que aquí se quería establecer era la protección para la persona que aún no había sido juzgada y que sin haber sido juzgada en la actualidad a veces ocurría que estaba por más de seis meses en la cárcel, porque no había podido prestar fianza o porque no se le había celebrado juicio. Entonces lo que se ha querido subsanar es esta situación particular donde no ha mediado juicio alguno.

"Esto lo que quiere decir es que en los casos donde no ha mediado juicio, una persona no puede estar detenida en la cárcel por más de seis meses. Llega el día del último mes de los seis meses y entonces lo ponen en la calle y eso no impide que se celebre juicio; pero se le celebra juicio ahora estando como si estuviera bajo fianza, sin estarlo. . . ."

No expresa la historia del precepto, en toda su extensión, el alcance del mismo. Sin embargo, surge inevitable la conclusión de que con él se tendió a garantizar al ciudadano contra posibles excesos de autoridad, evitando que la restricción efectiva de la libertad—cuando ha mediado causa probable para un arresto—se convierta, de hecho, en castigo anticipado por un delito no juzgado. La Convención Constituyente consideró razonable el término de 6 meses fijado para que el Estado descargara su responsabilidad de llevar a juicio a aquellos acusados que, por no haber podido prestar fianza para su libertad provisional, permanecían detenidos en espera de la celebración del juicio. Si bien los términos de la legislación vigente—60 días desde el arresto del acusado para que el Fiscal presente acusación y 120 días para la celebración del juicio después de presentada aquélla—sirvieron de medida para fijar el de 6 meses del precepto que nos ocupa, éste no se incluyó en la Carta de Derechos como parte de la garantía a juicio rápido—que en disposición separada se reconoce al acusado—sino como una garantía de que pasados 6 meses sin celebrársele juicio, el Estado no restringiría de ahí en adelante la libertad personal de aquéllos que no hubieren prestado fianza. Dicho precepto constituye una limitación al poder

de custodia del Estado, y su aplicación no conlleva la exoneración del acusado por los hechos delictivos que se le imputan. Aunque al aprobarlo se tomó en consideración el término de 120 días que como medio de instrumentar el derecho a juicio rápido existía en la legislación vigente, el precepto no asimila, en su propósito, ese derecho, ni puede hacerse depender el disfrute de su garantía de las consecuencias jurídicas a que está sujeto el ejercicio del primero.

Fué claro el pensamiento de la Convención Constituyente que si al cabo de 6 meses de detención en espera de juicio —en defecto de fianza— el acusado no había sido enjuiciado, éste sería puesto en libertad, sin que se afectara el proceso seguido en su contra, el cual seguiría su curso independientemente de su excarcelación. Tuvo presente la Convención, al fijar dicho término, que "los tribunales están sobrecargados de trabajo en lo criminal." En ese sentido, fué su voluntad que aun cuando pudiera existir de parte del Estado justa causa para la no celebración del juicio dentro del término estatutario señalado, (1) ello no surtiría el efecto de prolongar la prisión en espera de juicio por más de 6 meses, ni de impedir la excarcelación del acusado vencido dicho término, no obstante el que para los fines de juicio rápido, en su expresión estatutaria, dicha justa causa pudiera impedir el sobreseimiento del proceso.

En este caso confrontamos el problema de si las solicitudes de posposición de juicio hechas por el acusado en dos ocasiones antes de transcurrir el período de 6 meses, equivalen, como sostiene el fiscal, a una renuncia, no ya del derecho a un juicio rápido sino del derecho a salir en libertad una vez vencido

---

(1) Artículo 448 del Código de Enjuiciamiento Criminal:

"A menos que exista justa causa contraria, el tribunal decretará el sobreseimiento del proceso en los casos siguientes:

"1. Cuando una persona haya sido detenida para responder por la comisión de un delito público, siempre que no se haya presentado acusación contra ella en el término de sesenta días desde su detención.

"2. Cuando un acusado, cuyo juicio no haya sido transferido a petición suya, no sea sometido a juicio en el término de ciento veinte días, a contar desde la presentación de la acusación."

dicho término sin haberse celebrado el juicio. Resolvemos que las solicitudes del acusado no tienen las consecuencias jurídicas que le atribuye el fiscal. El derecho que aquí se invoca, consagrado en el mandato constitucional que nos ocupa, no es renunciable, aunque tampoco es absoluto. Hemos de explicarnos.

Todo acusado, en procesos criminales, tiene derecho "a gozar de la presunción de inocencia," "a quedar en libertad bajo fianza antes de mediar fallo condenatorio," y a que la fianza que se le fije no sea excesiva. Artículo II, Sección 11, Constitución del Estado Libre Asociado de Puerto Rico. El derecho a la libertad provisional bajo fianza, el derecho a que éstas no sean excesivas, y el derecho a salir en libertad transcurridos seis meses de encarcelación por defecto de fianza en espera de juicio, son derechos correlativos, dirigidos todos a salvaguardar el superior derecho—constante también como garantía constitucional—de la presunción de inocencia. Las disposiciones sobre libertad provisional bajo fianza, y sobre fianzas excesivas, no surgen como un acto de gracia del Estado: su existencia es coextensiva con la necesidad de efectivar el fundamental derecho a la presunción de inocencia, sin que sufra menoscabo la protección que a la sociedad debe, en un válido y razonable ejercicio de poder público, el Estado. "Este tradicional derecho a la libertad provisional antes de convicción—ha dicho el Tribunal Supremo de Estados Unidos—permite la preparación de la defensa, sin impedimentos, y sirve para evitar la inflicción de castigo antes de la convicción. [Cita omitida.] A menos que este derecho a fianza antes del juicio sea conservado, la presunción de inocencia, asegurada sólo después de siglos de lucha, perderá su significado." *Stack* v. *Boyle*, 342 U.S. 1, 96 L. Ed. 7.

Fué indudablemente inspirada en un propósito de fundamental política pública que la Convención Constituyente preceptuó que la prisión preventiva antes del juicio no excedería de 6 meses. La Convención obviamente estimó que un pe-

ríodo mayor de detención en espera de juicio, (²) en defecto de fianza, constituía un gravamen sobre el ciudadano que, presumiéndose inocente hasta el momento de recaer convicción, era restringido por el Estado—en el ejercicio de su poder de custodia—en el disfrute de su libertad personal, con el solo propósito de hacerle comparecer a juicio en su día. Consideró preferible rendir la custodia de un acusado después de ese período, antes que hacer vulnerable la integridad de su derecho a la presunción de inocencia—que también consagraba en la propia Constitución—si dejaba ilimitado el ejercicio de ese poder de custodia por la mera utilidad de que el Estado le tuviera disponible para llevarle al tribunal.

La posposición de un juicio a solicitud de un acusado—por causa fundada—interrumpe el término estatutario de 120 días dentro del cual debe celebrarse el juicio y excluye las consecuencias jurídicas del sobreseimiento del proceso. El derecho de un acusado a una posposición—bien se encuentre en libertad bajo fianza o bajo custodia—no puede medirse en términos de renuncia o de sacrificio del derecho a su libertad personal, luego de seis meses de detención, ni éste puede medirse en términos de renuncia o de sacrificio del derecho a la posposición, si ésta procede. La posposición requiere el ejercicio de una discreción judicial sobria, para proteger al acusado en el disfrute de su derecho a un juicio justo, y en sus oportunidades de defensa. Se concede por consideraciones que no afectan la situación de libertad o custodia del acusado, y su concesión—que surte efectos de renuncia tan sólo

---

(²) Los juicios de los acusados bajo custodia del Estado, conforme al art. 181 del Código de Enjuiciamiento Criminal, tienen preferencia sobre los de los acusados en libertad bajo fianza. Dicho artículo dispone:

"Las causas relacionadas en la lista deberán despacharse por el orden indicado a continuación, a no disponer el tribunal, por motivo justificado, la sustanciación de determinada causa fuera de su turno:

"1. Procesos por *felony*, cuando el acusado se halla bajo custodia.

"2. Procesos por *misdemeanor*, cuando el acusado se halla detenido.

"3. Procesos por *felony*, cuando el acusado se halla en libertad bajo fianza.

"4. Procesos por *misdemeanor*, cuando el acusado se halla en libertad bajo fianza."

en la esfera del juicio rápido—no puede derrotar su derecho a la libertad provisional sin fianza después de seis meses, ni puede condicionarse a que éste se renuncie. Ningún fundamento de buen gobierno justificaría extender las consecuencias de una renuncia del derecho a juicio rápido—en su expresión legislativa—(³) a un derecho que engendra, por motivos superiores de política pública, una garantía inmediata de libertad. La limitación constitucional al ejercicio del poder para restringir la libertad de un ciudadano, si bien generadora de un derecho individual, envuelve una norma de conducta, de estricta observancia por el Estado en el descargue de su función pública, para su propio crédito—y para su propia honra.

El derecho que dimana de ese precepto, sin embargo, no es absoluto. Como es un derecho que madura normalmente por el mero lapso del tiempo, ni la ilegalidad ni el fraude de un acusado—en actos tendentes a producir la incapacidad del Estado para someterle a juicio—ampararían su ejercicio incondicional. Ese derecho, que no puede ser objeto de renuncia, tampoco puede ser objeto de rapto, y de mediar circunstancias del carácter de las apuntadas, el acusado no podría reclamarlo hasta que el Estado, pudiendo descargar prontamente su responsabilidad trayéndole a juicio, dejare de hacerlo.

Bajo los hechos que aquí concurren, y por las razones que hemos expuesto, Bonifacio Sánchez Álvarez tiene derecho a salir en libertad provisional, por haber transcurrido el término fijado en el precepto constitucional por él invocado hasta la celebración de su juicio.

El auto será expedido de conformidad.

---

(³) El Informe de la Comisión de Carta de Derechos contiene esta recomendación respecto al derecho a juicio rápido:

"El derecho a un juicio rápido y público está garantizado por la Enmienda Sexta de la Constitución de. Estados Unidos y el Artículo 2 de la Carta Orgánica. Recomendamos la misma norma general y flexible que contienen esas disposiciones constitucionales, reafirmando el principio, para que las leyes y la administración lo cumplan en sus consecuencias específicas."